IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dr. Walter C. Howard, | ) | C/A No.: 3:11-2214-MBS-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Allen University, Dr. Charles E. Young, and Dr. Pamela M. Wilson | ) ) ) ) | |
| Defendants. | ) ) | |

In this employment discrimination case, plaintiff Walter C. Howard ("Plaintiff") is suing his former employer Allen University ("Allen") and two Allen employees, Dr. Charles E. Young ("Young") and Dr. Pamela M. Wilson ("Wilson"), in their individual capacities (collectively "Defendants"). Plaintiff alleges a retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff's complaint also alleges claims of defamation and civil conspiracy under South Carolina law.

This matter comes before the court on the motions to dismiss filed by Defendants Young and Wilson pursuant to Fed. R. Civ. P. 12(b)(6). [Entry #9, #10]. Plaintiff filed a response to the motions [Entry #18], and Young and Wilson filed a joint reply. [Entry #23]. The motions to dismiss having been fully briefed, they are ripe for disposition.

Also pending before the court is Plaintiff's motion to amend the complaint, filed simultaneously with Plaintiff's response to the motions to dismiss. [Entry #19].

Defendants filed a response to the motion [Entry #26], and Plaintiff filed a reply. [Entry #27]. The motion to amend is likewise ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motions to dismiss are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned grants Plaintiff's motion to amend and recommends the district court grant in part and deny in part Young and Wilson's motions to dismiss.

I.  Factual and Procedural Background[1]

Plaintiff is an African-American born in 1944 who began working at Allen in 2005 as its Vice President for Academic Affairs. [Entry #1 at ¶ 7]. In 2007, Plaintiff claims Allen eliminated the position of Vice President for Student Affairs and consolidated those duties with those he maintained based on the quality of his work performance. *Id.* at ¶ 9. Plaintiff alleges he received a salary increase at the end of the 2007–08 academic year "as a reward for overall outstanding accomplishments," and effective January 2009, he was promoted to Senior Vice President for the College for Professional Adults with his salary increasing to $90,900. *Id.* at ¶¶ 9, 10, 11. In his position as Senior Vice President, Plaintiff claims to have supervised three associate vice presidents and two staff members; provided leadership in strategic planning, curriculum

---

[1] In reviewing the sufficiency of Plaintiff's complaint under Fed. R. Civ. P. 12, the court construes the complaint liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 234–37 (1974). The factual allegations in the complaint [Entry #1] and amended complaint [Entry #19-1] are identical.

development, faculty/staff development, enrollment management, and marketing and promotion for the College of Professional Adults; and overseen a budget of $20 million. *Id.* at ¶ 11.

About October 2008, Dr. Sonya Melton ("Melton"), then the Vice President of Enrollment Management to Associate Vice President of Enrollment Management, was allegedly demoted by Young, as the President of Allen, after she filed a charge of sexual harassment and retaliation against Allen and accused Young of sexual harassment and retaliation. *Id.* at ¶ 12. Plaintiff claims Melton was placed under his direct supervision beginning in January 2009. *Id.* at 13.

Plaintiff alleges Young directed him to assist in retaliating against Melton by "documenting her every move and creating a file on her so that she would resign her employment." *Id.* at ¶ 14. Plaintiff claims that when he objected to Young's treatment of Melton, Young threatened to strip Plaintiff of his authority and deny him funding for his department. *Id.*

Plaintiff alleges that about April 2010, Young directed him to prepare a false, negative performance evaluation of Melton. *Id.* at ¶ 15. Plaintiff alleges that he refused, and Young threatened to make him "administratively invisible" by removing his staff and budget and reassigning his job duties. *Id.* at ¶¶ 15, 16. Plaintiff alleges that over the next several months, Young "made good on his threats" by reassigning Plaintiff's staff and job duties, eliminating his budget, directing him to report to a building where he was the only employee on the floor, and forbidding other employees from interacting with him. *Id.* at ¶ 17.

Plaintiff claims Young was placed on administrative leave for his actions related to Melton around August 2010 and Wilson assumed the interim presidency of Allen. *Id.* at ¶ 18. Plaintiff alleges "Young continued to serve in the president role and confer with Dr. Wilson regarding Plaintiff's employment during his alleged administrative leave." *Id.*

Also in August 2010, Plaintiff retained counsel and proceeded with a grievance against Young regarding his demotion. *Id.* at ¶ 19. He notified Allen that he intended to file a charge of retaliation with the South Carolina Human Affairs Commission ("SCHAC"). *Id.*

Plaintiff claims that around October 2010, he was *de facto* demoted when Wilson removed him from the Senior Management Team and directed him to report to the Vice President of Academic Affairs. *Id.* at ¶ 20. Plaintiff alleges that after his demotion, he met with Allen's counsel and its human resources agent on December 1, 2010, and he stated that his SCHAC retaliation charge was in process and would soon be served on Allen. *Id.* at ¶¶ 21, 22.

Plaintiff claims he was terminated by Wilson through a letter he received on December 14, 2010. *Id.* at ¶ 23. He alleges neither Wilson nor Allen has ever articulated a reason for his termination. *Id.* at ¶ 24. Plaintiff contends he "clearly was terminated for raising Dr. Young's retaliatory treatment of him and Dr. Melton to the Allen Board of Trustees and to Dr. Wilson, for questioning Dr. Wilson's continuation of Dr. Young's retaliation against him, and for pursuing a charge of discrimination with SHAC/EEOC." *Id.* at ¶ 25. He alleges he continues to suffer emotional distress and other mental and

physical health problems, lost wages, and reduced earning capacity as a result of his treatment by Defendants. *Id.* at ¶ 26.

II.  Discussion

  A.  Plaintiff's Motion to Amend the Complaint

In an apparent response to Young and Wilson's motions to dismiss filed on September 26, 2011, Plaintiff filed a motion to amend the complaint on October 24, 2011. [Entry #19]. Under the proposed amendments, Plaintiff seeks to have (1) the retaliation claim proceed only against Allen and dropped as to Young and Wilson; (2) the defamation claim proceed against all three Defendants rather than only against Young; and (3) the civil conspiracy claim pled against Young and Wilson in the alternative to the defamation claim. [Entry #19-1]. Because the court's ruling on the motion to amend directly impacts the analysis of Young and Wilson's motions to dismiss, the undersigned first addresses the motion to amend.

"[L]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks omitted).

Defendants oppose Plaintiff's motion to amend only in part and request that the court deny the motion "as it relates to the addition of Wilson to [Plaintiff's] defamation claim and his amendment related to his civil conspiracy claim." [Entry #26 at 7]. Defendants argue such amendments would be futile, but do not claim the amendments

would be prejudicial to them or that there has been bad faith on the part of the Plaintiff in seeking the amendments. Defendants do not appear to oppose Plaintiff's dropping the retaliation claim against Young or the assertion of the defamation claim against Allen.

Defendants' futility arguments opposing the motion to amend reiterate the substantive arguments made in support of their motions to dismiss. In addition, Young and Wilson's reply brief in support of their motions to dismiss addressed the claims set forth in the proposed amended complaint. The undersigned, therefore, grants Plaintiff's motion to amend the complaint because, *inter alia*, Defendants have not opposed certain of the proposed amendments and have had a full opportunity to substantively address the amended claims in their briefing on the motions to dismiss. The undersigned's analysis of Young and Wilson's motions to dismiss *infra* is based on Plaintiff's amended complaint. [Entry #19-1].

    B.    Young and Wilson's Motions to Dismiss

        1.    Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts

alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

    2.    Analysis

        a.    Retaliation Claim

Young argues Title VII does not provide for individual liability and Plaintiff's retaliation claim against him must be dismissed on that basis. [Entry #9-1 at 4]. Plaintiff's amended complaint does not assert a retaliation claim against Young, but rather asserts the cause of action only against Allen. Defendant Allen has not moved to dismiss any of the claims against it. The undersigned therefore finds it unnecessary to make a recommendation regarding this cause of action.

        b.    Defamation Claim

Plaintiff claims Young defamed him by removing his job duties, budget, and staff; accusing him of lacking the knowledge, skills, and experience to grow enrollment at Allen; and making verbal statements to senior staff at Allen that Plaintiff lacked the integrity to be an effective senior administrator. [Entry #19-1 at ¶¶ 34, 36]. Plaintiff similarly alleges Wilson defamed him by continuing actions taken by Young, further demoting Plaintiff, having his named removed from the university directory and organizational chart, and terminating his employment without providing any reason. *Id.* at ¶ 35. Young and Wilson argue Plaintiff has failed to state a claim for false insinuation defamation, that Young's alleged statements were not defamatory, and any acts or statements by either Young or Wilson were qualifiedly privileged. [Entry #9-1 at 4–8; Entry #26 at 2–4].

To recover for defamation under South Carolina law, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002).

(1) False Insinuation Defamation

Under South Carolina, "a defamatory insinuation may be made by actions or conduct as well as by word." *Tyler v. Macks Stores of South Carolina, Inc.*, 272 S.E.2d 633, 634 (S.C. 1980). Defamation "need not be accomplished in a direct manner" and a "mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain." *Id.* "The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 150 F.3d 376, 381 (4th Cir. 1998) (quoting *Restatement (Second) of Torts § 563* in defamation case under South Carolina law).

On a motion to dismiss, the court must accept the facts pled by a plaintiff as true. Young and Wilson argue, however, that even if they committed the acts alleged by Plaintiff, "the meaning of such acts is hardly plain, much less false and malicious." [Entry #9-1 at 5; Entry #26 at 3]. Young and Wilson further argue that Plaintiff has pled no facts to support the conclusion that others at Allen who observed Plaintiff's employment changes would automatically infer that he was not satisfactorily performing his job. *Id.* Young and Wilson contend there could have been many reasons that Allen might have altered Plaintiff's employment status and that Plaintiff's conclusion that third

8

parties would have concluded he was unfit for his position is pure speculation. [Entry #9-1 at 5].

Given Plaintiff's relatively rapid rise to Senior Vice President for the College for Professional Adults and the fact that he was allegedly subsequently demoted to a position with no supervisory authority, no budget, and no interaction with other employees, the undersigned cannot conclude at this stage of the litigation that there was no defamatory insinuation in Young and Wilson's alleged actions. Accepted as true and in the light most favorable to Plaintiff, the allegations provide a sufficient basis for Plaintiff's claim of false insinuation defamation. Consequently, the undersigned recommends denying the motions to dismiss on this point.

(2) False Statement Defamation

Plaintiff alleges Young defamed him by making "verbal statements to senior staff at Allen that Plaintiff lacked the integrity to be an effective senior administrator."[2] [Entry #19-1 at 7]. Young contends such statements, even if made, are not defamatory because they are statements of opinion. [Entry #9-1 at 6].

A statement is defamatory if it tends "to impeach the honesty or integrity or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation." *Scott v.*

---

[2] Plaintiff alleges Young accused him of lacking the knowledge, skills, and experience to grow the enrollment at Allen. [Entry #19-1 at ¶ 36]. Plaintiff does not allege that any third parties overheard these statements and thus has not pled the statements were published to third parties. To the extent Plaintiff intends to rely on this allegation in support of his defamation claim, the undersigned recommends finding the allegation insufficient to support a defamation claim.

9

*McCain*, 250 S.E.2d 118, 120 (S.C. 1978) (internal quotations omitted). "Though falsity is an element of defamation and although truth is a complete defense, a defamatory statement is presumed to be false under common law." F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 485 (3d ed. 2004). The court makes an initial determination whether the statement is susceptible of having a defamatory meaning. *White v. Wilkerson*, 493 S.E.2d 345, 347 (S.C. 1997). "[T]he law in South Carolina allows the context of the words themselves and the circumstances under which the words are spoken to be considered in determining whether there is a defamatory meaning and whether it is actionable . . . ." *Goodwin v. Kennedy*, 552 S.E.2d 319, 324 n. 4 (S.C. App. 2001).

Relying on *Gertz v. Welch, Inc.*, 418 U.S. 323, 339–40 (1974), Young argues that statements of opinion are not, as a matter of law, defamatory unless they also convey a false statement of fact. The Supreme Court has observed, however, that its language in *Gertz* "has become the opening salvo in all arguments for protection from defamation actions on the ground of opinion, even though the case did not remotely concern the question." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18 (1990). In *Milkovich*, the Supreme Court clarified that, in *Gertz*, it did not intend "to create a wholesale defamation exemption for anything that might be labeled 'opinion'" because doing so would "ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id.*

The question before the court then is whether Young's alleged statement—"that Plaintiff lacked the integrity to be an effective senior administrator"—implies an assertion of objective fact. Young focuses on the word "integrity" in Plaintiff's

10

allegation and argues that whether someone has integrity is a subjective opinion and not something that can be proven true or false. [Entry #9-1 at 7]. The remainder of the allegation, however, is more significant to the undersigned. Young's alleged statement implies that Plaintiff was not an effective senior administrator. Whether Plaintiff adequately performed his duties as a senior administrator may be measured by objective evidence. Thus, the alleged statement is more than mere opinion and the opinion argument advanced by Young is inapplicable. Young does not challenge the remaining defamation elements as they relate to his alleged statement. Therefore, the undersigned recommends denying Young's motion to dismiss Plaintiff's defamation claim on his alleged statement.[3]

(3)   Qualified Privilege

Young and Wilson argue the allegedly defamatory acts and statement are qualifiedly privileged because they were made in good faith in the usual course of business. [*Id.*, Entry #26 at 3–4]. Plaintiff responds that the privilege is inapplicable under the circumstances alleged. [Entry #18 at 6].

Under the affirmative defense of qualified privilege, "one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134

---

[3] The undersigned notes that under South Carolina law, slander is "actionable *per se*" if it charges a plaintiff with "unfitness in one's business or profession." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501–02 (S.C. 1998). Plaintiff has not raised this issue in opposition to Young and Wilson's motions to remand and the undersigned has accordingly based the recommendations herein only on the arguments advanced by the parties.

(S.C. 1999). "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." *Constant v. Spartanburg Steel Prods., Inc.*, 447 S.E.2d 194, 196 (S.C. 1994). The privilege may be lost, however, "by the manner of its exercise." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 749 (S.C. App. 2001). The person invoking the privilege must not exceed the scope of the occasion, engage in any unnecessary defamation, or act with actual malice. *Id.*

Although the question of whether an occasion gives rise to a qualified privilege is generally one for the court, the question of whether the privilege has been abused is one for the jury. *Swinton* at 134. "Factual inquiries, such as whether the defendants acted in good faith in making the statement, whether the scope of the statement was properly limited in its scope, and whether the statement was sent only to the proper parties, are generally left in the hands of the jury to determine whether the privilege was abused." *Id.*

Young and Wilson argue Plaintiff has pled no facts showing the privilege was exceeded. [Entry #9-1 at 7–8; Entry #26 at 3–4]. However, Plaintiff alleges that the communications and actions described in the complaint "were motivated primarily by Plaintiff's refusal to participate in Dr. Young's retaliatory actions against Dr. Melton." [Entry #19-1 at ¶ 38]. Assuming without deciding that the qualified privilege applies, the undersigned recommends finding that this allegation alone is sufficient to raise the question of whether the privilege has been abused and prevents dismissal grounded in application of the qualified privilege.

Because the undersigned recommended a finding *supra* that Plaintiff's complaint states a claim for defamation based on Young and Wilson's alleged actions and Young's alleged statement, the undersigned recommends the district court deny Young and Wilson's motions to dismiss Plaintiff's defamation claim.

c. Civil Conspiracy Claim

Plaintiff asserts, alternatively to his defamation claim, a claim of civil conspiracy against Young and Wilson. [Entry #19-1 at ¶¶ 40–45]. Young and Wilson seek dismissal of Plaintiff's civil conspiracy claim arguing that he has failed to plead an overt act in furtherance of the conspiracy or show the existence of special damages. [Entry #23 at 3]. They also argue Plaintiff's civil conspiracy claim must be dismissed because intracorporate immunity applies and, as an allegedly at-will employee, Plaintiff cannot maintain a civil conspiracy based on his termination or alleged demotion. [Entry #9-1 at 11; Entry #26 at 6].

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. App. 2009). In other words, the acts pled in furtherance of the conspiracy must be "separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth* at 875. "Moreover, because the quiddity of a civil conspiracy claim is the special damage

resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Id.* at 874. "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." *Id.* "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Id.*

In support of their motions to dismiss, Young and Wilson first argue that Plaintiff's civil conspiracy claim does not meet federal pleading requirements. [Entry #9-1 at 9; Entry #26 at 4]. They contend Plaintiff's claim is nothing more than a "naked assertion" of conspiracy without sufficient factual support. [Entry #9-1 at 9]. Because Plaintiff includes factual allegations in support of his claim, the undersigned recommends declining to dismiss Plaintiff's civil conspiracy cause of action on this basis.

Young and Wilson further argue that Plaintiff merely incorporates the allegations supporting his other causes of action rather than alleging separate and independent acts in furtherance of the conspiracy as required under South Carolina law. [*Id.*; Entry #26 at 4]. Plaintiff contends his allegation that "Young and Wilson conferred and discussed on numerous occasions how to injure Plaintiff personally and in his employment" satisfies this element of civil conspiracy. [Entry #18 at 7]. Young and Wilson rely on *Hackworth*, *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607, 611 (S.C. 1981), *rev'd on other grounds*, 321 S.E.2d 602 (S.C. App. 1984), *quashed in part on other grounds*, 336 S.E.2d 472 (S.C. 1985), and *Kuznik v. Bees Ferry Assocs.*, 538 S.E.2d 15, 31 (S.C. App. 2000), in arguing for dismissal on this element. In those cases, the courts held that a civil

conspiracy claim may not proceed where the facts underlying the cause of action are identical to those facts pled in support of other causes of action in the same case. *See Todd*, 278 S.E.2d at 293 (finding claim for civil conspiracy was properly dismissed because it did "no more than incorporate the prior allegations and then allege the existence of a civil conspiracy"); *Hackworth*, 682 S.E.2d at 875 (stating that the factual allegations underlying the breach of contract and civil conspiracy causes of action were "identical"); *Kuznik*, 538 S.E.2d at 31 (holding plaintiff could not maintain a conspiracy cause of action where he "merely realleged the prior acts complained of in his other causes of action"). In the instant case, Plaintiff has pled facts specific to the civil conspiracy cause of action that are not pled elsewhere in the amended complaint. For that reason, the undersigned recommends a finding that Plaintiff has met the minimum threshold of alleging separate and independent acts in furtherance of the alleged civil conspiracy.

With regard to the South Carolina requirement that causes of action for civil conspiracy plead "special damages," Young and Wilson argue Plaintiff has failed to satisfy this element. [Entry #9-1 at 10; Entry #26 at 4]. Plaintiff argues that he has alleged special damages flowing from the alleged conspiracy, "including damages for Plaintiff's unemployment and damaged reputation." [Entry #18 at 7]. Plaintiff's defamation claim likewise pleads "special damages, including but not limited to loss of reputation, mental anguish, emotional distress, pain and suffering, damage to his profession and occupation, and ability to earn income now and in the future." [Entry #19-1 at ¶ 38]. The undersigned finds there is no difference between the damages pled in

support of the conspiracy and defamation claims; thus, the undersigned recommends a finding that Plaintiff has failed to satisfy the special damages element of his civil conspiracy claim. *See Parkman v. Univ. of South Carolina*, 44 Fed. Appx. 606, 620 (4th Cir. 2002) (affirming dismissal of civil conspiracy claim under South Carolina law and stating, "the damages allegedly resulting from the conspiracy must not overlap with or be subsumed by the damages allegedly resulting from the other claims").

Plaintiff argues that pleading civil conspiracy as an alternative to defamation prevents dismissal of his conspiracy claim. [Entry #18 at 7]. He contends that "because it is pled in the alternative, the civil conspiracy claim is not duplicative of the other claims with regard to its factual allegations and damages sought." *Id.* at 7–8. The undersigned is not persuaded by this argument. In *Hackworth*, the South Carolina Court of Appeals held that a party may plead alternative theories in cases involving civil conspiracy; however, "when a party wishes to assert multiple causes of action, including civil conspiracy, it must allege facts in furtherance of the conspiracy and special damages that are separate and independent of the other acts and damages that underlie the causes of action within the same complaint." 682 S.E.2d at 876. The court went on to state that "because a conspiracy only becomes actionable 'once overt acts occur which proximately cause damage to the [plaintiff],' it is necessary for the plaintiff to plead special damages apart from the damages listed as part of other claims in the complaint." *Id.* (quoting *Todd*, 278 S.E.2d at 611). Plaintiff cannot avoid pleading special damages by couching his conspiracy claim as an alternative to defamation. Thus, the undersigned recommends

a finding that Plaintiff's amendment re-casting his conspiracy claim as an alternative claim does not save the claim from dismissal for failure to plead special damages.

Because the undersigned recommends dismissal of Plaintiff's civil conspiracy claim for failure to plead special damages, it is not necessary for the undersigned to address Young and Wilson's remaining arguments that intracorporate immunity applies and Plaintiff's conspiracy claim cannot lie because he was an at-will employee. The undersigned notes, however, that whether the alleged conspiratorial acts were in furtherance of the legitimate business interests of Allen and whether Plaintiff was an at-will employee appear to be factual determinations that would preclude the dismissal of Plaintiff's conspiracy claim on those grounds alone.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned grants Plaintiff's motion to amend the complaint [Entry #19]. The undersigned recommends Young and Wilson's motions to dismiss [Entry #9, #10] be denied as to Plaintiff's defamation claim and granted as to Plaintiff's civil conspiracy claim.

IT IS SO RECOMMENDED.

February 27, 2012  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).