IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Dr. Walter C. Howard, | ) |
| Plaintiff, | ) C/A No. 3:11-2214-MBS <br> ) <br> ) |
| vs. | ) |
| | ) **OPINION AND ORDER** |
| Allen University; Dr. Charles E. Young, in his official and individual capacities; and and Dr. Pamela M. Wilson, in her official and individual capacities, | ) <br> ) <br> ) <br> ) |
| | ) |
| Defendants. | ) |
| | ) |

On August 22, 2011, Plaintiff Dr. Walter C. Howard filed the within action against his former employer, Defendant Allen University; the former president of Allen University, Defendant Dr. Charles E. Young; and the current president of Allen University, Defendant Dr. Pamela M. Wilson. Plaintiff filed an amended complaint on August 15, 2012. Plaintiff alleges that he was terminated in retaliation for opposing Dr. Young's efforts to sexually harass and retaliate against Dr. Sonya Melton, another Allen University administrator. Plaintiff asserts causes of action for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (First Cause of Action as to Allen University)); defamation (Second Cause of Action as to Drs. Young and Wilson and Allen University; and civil conspiracy (Third Cause of Action as to Drs. Young and Wilson). The court dismissed the civil conspiracy claim by order filed August 22, 2012 (ECF No. 48).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. Defendants filed a motion

for summary judgment on June 14, 2013. Plaintiff filed a response in opposition on July 9, 2013, to which Defendants filed a reply on July 19, 2013. Plaintiff filed a surreply brief on July 26, 2013. On September 23, 2013, the Magistrate Judge filed a Report and Recommendation in which she recommended that Defendants' motion for summary judgment be denied. Defendants filed objections to the Report and Recommendation on October 10, 2013. Plaintiff filed a reply to Defendants' objections on October 28, 2013.

## I. FACTS

The facts are thoroughly discussed in the Report and Recommendation. Briefly, Plaintiff began working for Allen University as vice president for student affairs in 2005. In 2008, Plaintiff was promoted to senior vice president and placed in charge of an initiative entitled the College for Professional Adults (CPA). In this position, Plaintiff supervised three associate vice presidents and two administrative employees. One of the associate vice presidents, Dr. Sonya Melton, received a negative performance evaluation from Plaintiff in May 2009, observing that she led by domination and intimidation, demonstrated a gross lack of integrity, and failed to meet the minimum standard of performance expected of a professional at her level.

Plaintiff thereafter met with Dr. Young to recommend the termination of Dr. Melton's employment. Plaintiff alleges that Dr. Young indicated he could not discharge Dr. Melton because she had instituted a sexual harassment claim against Dr. Young. According to Plaintiff, Dr. Young instructed Plaintiff to make working conditions intolerable so that Dr. Melton would resign. Plaintiff contends that he refused to do more than documenting Dr. Melton's deficiencies and discussing them with her, as had been his practice. Plaintiff alleges that Dr. Young continued to insist at every subsequent meeting between them that Plaintiff attempt to force Dr. Melton to resign. In addition,

Dr. Young allegedly threatened to make Plaintiff "administratively invisible" by removing his staff and duties if he did not abide by Dr. Young's directive.

In April or May 2010, Plaintiff drafted a positive performance evaluation for Dr. Melton, noting that she had improved in all areas, including team orientation, quality and quantity of her work product, and her ability to accept criticism. According to Plaintiff, Dr. Young instructed him to rewrite the evaluation. Plaintiff refused to complete an evaluation rather than give Dr. Melton a negative evaluation. Plaintiff alleges that beginning in May 2010, his staff was moved to other positions, he was removed from an administrative leadership team, and that an organizational chart presented by Dr. Young at a meeting on August 2, 2010 did not reflect Plaintiff's position at Allen University. The CPA program was moved to academic affairs, purportedly as a result of restructuring at Allen University.

Subsequently, Dr. Young was placed on administrative leave, and Dr. Wilson took over as interim president on August 3, 2010. By letter dated August 26, 2010, Plaintiff, through counsel, notified counsel for Allen University of the retaliation allegedly experienced by Plaintiff as the result of opposing Dr. Young's attempts to retaliate against Dr. Melton. Plaintiff further informed counsel for Allen University that he intended to file a charge of retaliation with the South Carolina Human Affairs Commission.

During the fall of 2010, Plaintiff took a leave of absence for medical reasons. He returned to Allen University in October 2010, and was informed that he had been placed under the supervision of Dr. Lady June Hubbard-Cole. By letter dated October 28, 2010, Plaintiff, through counsel informed counsel for Allen University the he allegedly continued to experience retaliation by Dr. Wilson. Plaintiff and his counsel met with representatives from Allen University on

December 1, 2010 to discuss Plaintiff's claims. On December 14, 2010, Plaintiff, Dr. Melton, and thirteen other employees of Allen University were terminated. No reason was given for their discharge. Each was escorted off the campus by security officers. Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission on February 7, 2011, alleging as follows:

> I. **PERSONAL HARM:** (A) I was intimidated and harassed from on or about November 1, 2008, through on or about August 2, 2010. (B) I was demoted on or about August 2, 2010. (C) I was discharged on or about December 14, 2010.
>
> II. **RESPONDENT'S REASON(S) FOR ADVERSE ACTION(S):** (A-C) I was told that unless I harassed and retaliated against a female employee who had filed sexual harassment charges against the President, Charles E Young, I would not get an appropriated operating budget, staff would be removed, my duties would be assigned to other administrators, and I would be removed from the senior leadership team.
>
> III. **COMPLAINANT'S CONTENTION(S):** (A-C) President Young created a hostile work environment for me, in that I was continually threatened because I refused to purposefully harass and retaliate against the female employee as directed. I refused to do so for legal, ethical, professional and religious reasons. Consequently, I was demoted and ultimately discharged.
>
> IV. **DISCRIMINATION STATEMENT:** I therefore believe I was discriminated and retaliated against because of my opposition to employment practices declared unlawful by the South Carolina Human Affairs Law, as amended and Title VII of the United States Civil Rights Act of 1964, as amended.

Charge of Discrimination, ECF No. 77-2.

Defendants assert that, contrary to Plaintiff's retaliation allegations, Allen University implemented departmental restructuring that resulted in his reassignment, and that he was discharged as part of a reduction in force that eliminated thirty-five positions on the Allen University campus. Defendants further dispute Plaintiff's defamation cause of action, stating that any claims asserted by Plaintiff would be subject to the affirmative defense of qualified privilege.

I. DISCUSSION

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Law/Analysis

I. Retaliation Cause of Action

A. Retaliation Generally

42 U.S.C. § 2000e-3(a) makes it an unlawful employment practice for an employer to discriminate against any of his employees because the employee has opposed any practice made an unlawful employment practice under Title VII of the Civil Rights Act of 1964. In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir.2013) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th

5

Cir.2005).  If a prima facie case is established, the burden shifts to the defendant to provide a legitimate, non-retaliatory basis for the action.  Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013) (citing Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004)).  Once this burden is met, the plaintiff must show by a preponderance of the evidence that the proffered reasons are pretextual.  Id. (citing Price, 380 F.3d at 212).  Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).  Stated differently, to prevail on a retaliation claim, the plaintiff must provide proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.  Id. at 2533.  The question in this case is whether Plaintiff's claims that he was made "administratively invisible," demoted, and discharged would have occurred absent his refusal to cooperate with Dr. Young's alleged retaliatory conduct against Dr. Melton.

B.      Magistrate Judge's Report and Recommendation Regarding Retaliation

The Magistrate Judge noted that Plaintiff engaged in protected activity at least by August 26, 2010, when he informed Allen University's counsel of his claims, and on October 23, 2010, when he met with counsel for Allen University.  The Magistrate Judge further noted that Dr. Young denied ordering Plaintiff to make Dr. Melton's working conditions intolerable.  Thus, the Magistrate Judge found that Plaintiff established the first prong of the prima facie case.   Because the credibility of both Plaintiff and Dr. Young is at issue, the Magistrate Judge determined that a genuine issue of material fact exists as to whether Plaintiff opposed unlawful retaliation prior to August 26, 2010.

As to the second prong, an adverse employment action, the Magistrate Judge noted that a decision was made at some point after Plaintiff refused to prepare a negative evaluation of Dr.

Melton in April 2010 to transfer Plaintiff and the CPA program to the supervision of Dr. Hubbard-Cole. The Magistrate Judge further observed that the employees under Plaintiff's direct supervision were transferred in August 2010. The Magistrate Judge additionally noted that Plaintiff was terminated on December 14, 2010, within a short time span subsequent to his letters to and meeting with counsel for Allen University.

As to the third prong, a causal connection, the Magistrate Judge determined that the temporal proximity between Plaintiff's claims of oppositional conduct and Defendants' allegedly retaliatory actions was sufficient to raise an inference of causation. For all these reasons, the Magistrate Judge concluded that Plaintiff has established a prima facie case of retaliation.

The Magistrate Judge next determined that Allen University proffered a legitimate, non-retaliatory reason for Plaintiff's reassignment, i.e., that the University implemented departmental restructuring; as well as a legitimate, non-retaliatory reason for Plaintiff's termination, i.e., that he was part of a reduction in force. Therefore, the Magistrate Judge turned to Plaintiff's arguments regarding pretext.

The Magistrate Judge found persuasive Plaintiff's argument that his inclusion in the reduction in force was pretextual. The Magistrate Judge observed that the record is unclear as to when the reduction in force decisions were made and whether they were influenced by Plaintiff's letters to counsel for Allen University in August and October 2010. The Magistrate Judge determined that, because the evidence regarding the events surrounding Plaintiff's reassignment and termination is primarily testimonial, genuine issued of material fact exist as to whether Defendants' proffered reasons for the actions complained of are pretextual. Accordingly, the Magistrate Judge recommended that Defendants' motion for summary judgment be denied as to Plaintiff's Title VII

retaliation claim.

C.     Defendants' Objections to the Report and Recommendation

1.     Prima facie case - causal connection. Defendants contend that the Magistrate Judge erred in finding that Plaintiff demonstrated a causal connection between his alleged protected activity–refusing in May or June 2009 to participate in Dr. Young's alleged plan to make Dr. Melton's working conditions intolerable–and the change in his position approximately fourteen months later. Relying on Price v. Thompson, 380 F.3d 209 (4th Cir. 2004), Defendants contend that the adverse action against an employee must take place shortly after learning of the protected activity.

It is true that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close[.]" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted). However, "[i]n cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" Lettieri v. Equant Inc., 478 F.3d 640, 649 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000)). Evidence of recurring retaliatory animus can be sufficient to satisfy the element of causation. Id. (citing cases). To hold otherwise would allow an employer to persecute for a substantial period of time an employee who engages in protected activity, and ultimately take an adverse action against that employee with impunity by claiming a lack of temporal proximity.

In this case, Plaintiff alleges that Dr. Young badgered him between May 2009 and April or May 2010 to join his campaign against Dr. Melton. When Plaintiff refused to prepare a negative

8

evaluation of Dr. Melton in 2010, Dr. Young purportedly reassigned Plaintiff's staff, removed his duties, and made him "administratively invisible." Subsequently, Plaintiff was placed under the supervision of Dr. Hubbard-Cole. Plaintiff further alleges that he was ostracized by Dr. Wilson. In the court's view, Plaintiff has alleged sufficient evidence of retaliatory animus to establish a causal connection for purposes of Defendants' motion for summary judgment.[1]

Defendants lastly assert that any causal connection between the receipt of correspondence from Plaintiff's counsel in August 2010 and his discharge in December 2010 is broken by two intervening events: (1) a letter from Plaintiff to the Southern Association of Colleges and Schools (SACS) charging violations of SACS standards at Allen University; and (2) a false report from Plaintiff to Dr. Hubbard-Cole that he had secured a grant from the Department of Education. The court notes that neither reason was offered by Dr. Wilson as basis for Plaintiff's termination. Rather, Dr. Wilson testified at her deposition that Plaintiff's termination was based on a workforce analysis developed to address Allen University's financial situation, as well as her perception that Plaintiff "was not contributing anything, which [she] didn't want to continue to pay someone for doing nothing." Dep. of Pamela M. Wilson 172-86, ECF No. 77-4. The court is not persuaded by Defendants' post-hoc rationalizations for Plaintiff's termination, which the court observes also can constitute evidence of pretext. See, e.g., Newsom v. Barnhart, 116 F. App'x 429, 434 (4th Cir. 2004) (citing EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852 (4th Cir. 2001)). Defendants' objections

---

[1] Defendants also contend that Plaintiff's "self-serving and uncorroborated" statements regarding Dr. Young are not adequate to establish a prima facie case of retaliation. As the Magistrate Judge correctly noted, Defendants rely on Dr. Young's self-serving and uncorroborated statements that the alleged conversations between him and Plaintiff did not occur. It is not the court's function to make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. Accordingly, disputed question of fact must be resolved in favor of the nonmoving party at the summary judgment stage. Meyers v. Baltimore Cty., 713 F.3d 723, 730 (4th Cir. 2013) (citing cases).

9

are without merit.

    2.  <u>Pretext for unlawful retaliation</u>.  Defendants next assert that the Magistrate Judge erred in finding that Plaintiff established pretext.  According to Defendants, Plaintiff offered no evidence to counter the legitimate reasons for his alleged adverse employment actions, i.e., a restructuring that placed him under the supervision of Dr. Hubbard-Cole and a reduction in force that mandated his termination.  Although it is a close question, the court agrees with the Magistrate Judge that a jury must weigh the credibility of the testimony regarding the protected activity, adverse actions, and nonretaliatory justifications therefor.[2]  Defendants' objections are without merit.

II. Defamation Cause of Action

A. <u>Defamation Generally</u>

   The tort of defamation allows a plaintiff to recover for injury to his reputation as the result of the defendant's communication to others of a false message about the plaintiff.  Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct.  <u>Holtzscheiter v. Thomson Newspapers, Inc.</u>, 506 S.E.2d 497, 501 (S.C. 1998) (citing <u>Wilhoit v. WCSC, Inc.</u>, 358 S.E.2d 397 (S.C. Ct. App.1987)).  The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  <u>Id.</u> at 506. "'To render the defamatory statement actionable, it is not necessary that the false charge be made in a direct, open

---

[2] Defendants also assert that the Magistrate Judge erred in finding compelling the fact that, at the time of his discharge, Plaintiff was offered additional wages if he would release all claims related to his employment.  The court accords little significance to this fact, since the same terms were offered to all the employees who were terminated on December 14, 2010.  <u>See</u> Summary of Terminations, ECF No. 82-9, 7-11.

10

and positive manner. A mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain.'" Fountain v. First Reliance Bank, 730 S.E.2d 305, 309 (S.C. 2012) (quoting Tyler v. Macks Stores of S.C., Inc., 272 S.E.2d 633, 634 (1980)).

In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege. Castine v. Castine, 743 S.E.2d 93, 97 (S.C. Ct. App. 2013) (quoting Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 134 (1999)). Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused. Id. (quoting Swinton Creek, 514 S.E.2d at 134)). Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded. Swinton Creek, 514 S.E.2d at 134 (citing sources). In general, the question whether an occasion gives rise to a qualified or conditional privilege is one of law for the court. However, the question whether the privilege has been abused is one for the jury. Id. (citing 50 Am. Jur.2d Libel and Slander § 276 (1995)).

B.      The Magistrate Judge's Report and Recommendation Regarding Defamation

The Magistrate Judge noted that, according to Plaintiff, he was subjected to libel by the alleged actions of Drs. Young and Wilson. According to Plaintiff, Dr. Young's allegedly removing Plaintiff's staff, reassigning his duties, and otherwise making him "administratively invisible" falsely insinuated that Plaintiff was unfit for his position. Further, Plaintiff asserts that Dr. Wilson's actions in refusing to communicate with him, terminating him, and having him escorted from the Allen University campus by security officers similarly impinged his reputation. The Magistrate Judge

observed that the court previously has held that third parties could reasonably infer that Plaintiff was stripped of his staff and job duties, and ultimately terminated because he not a suitable senior administrator at Allen University. The Magistrate Judge found that she was unable to determine as a matter of law whether the qualified privilege applies because a factual dispute remains as to whether Dr. Young instructed Plaintiff to retaliate against Dr. Melton. Accordingly, the Magistrate Judge recommended that Defendants' motion for summary judgment be denied as to Plaintiff's defamation cause of action.

C.     Defendants' Objections to the Report and Recommendation

1.     Defamatory Conduct.  Defendants first contend that the Magistrate Judge erred in finding actionable Plaintiff's claims against Drs. Young and Wilson. Defendants assert that the meaning of the alleged acts complained of by Plaintiff are not plain. Defendants note that there are numerous reasons an employer might change an employee's responsibilities or staff, irrespective of the employee's fitness for his or her job. However, as the court previously noted, Plaintiff undertook significant responsibilities as Vice President and Senior Vice President at Allen University. Plaintiff allegedly and was relieved of his duties without explanation and ostracized by Drs. Young and Wilson. The court cannot say that no reasonable jury would infer defamatory conduct. Defendants' objections are without merit.

2.     Qualified Privilege.  Defendants next assert that the Magistrate Judge erred in failing to find that the alleged defamatory insinuations were protected by the qualified privilege. Defendants state that there is no controversy as to the facts that Plaintiff was reassigned, lost his supervisory responsibilities, and was discharged from Allen University. Therefore, according to Defendants, the Magistrate Judge erred in not concluding as a matter of law that the qualified

privilege applies. The court disagrees. If, as the Magistrate Judge reasoned, the actions taken against Plaintiff stemmed from a retaliatory animus, the qualified privilege would not apply. As the South Carolina Supreme Court instructed in Bell v. Bank of Abbeville, 38 S.E.2d 641, 643 (S.C. 1946), a communication is entitled to the qualified privilege only if it is made honestly and in good faith. The court concludes that the facts must be more fully developed at trial before a finding can be made as to whether the qualified privilege applies. Defendants' objections are without merit.

## CONCLUSION

For the reasons stated, the court concurs in the recommendation of the Magistrate Judge. Defendants' motion for summary judgment (ECF No. 77) is **denied**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

January 7, 2014